UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KELLY CALHOON,

        Plaintiff,

vs.                    Case No.  2:06-cv-425-FtM-29SPC

LEADER SPECIALTY INSURANCE COMPANY,
an Ohio corporation,

        Defendant.
_____

**OPINION AND ORDER**

_____This matter comes before the Court on the parties' cross-motions for summary judgment (Docs. #60, #61) filed on September 4, 2007.  Both parties filed Responses (Docs. #65, #67) on September 18, 2007, and both parties filed supporting documents (Docs. #62, #63, #66, #68).

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The Court does not weigh conflicting evidence or make credibility determinations.  Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th

Cir. 1999). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)).

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d at 1225. If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

On June 14, 2005, Travis White (White) was driving his 1998 Chevy Malibu in Lehigh Acres with plaintiff Kelly Calhoon

(plaintiff or Calhoon) as his passenger when he was involved in a collision.  As a result of the accident, plaintiff sustained life threatening injuries.  Mr. White's motor vehicle was insured by defendant Leader Specialty Insurance Company (defendant or Leader[1]).

By letter dated June 20, 2005, Lynne Takais, Field Casualty Adjuster, notified White that he was not covered for Bodily Injury Liability coverage under his Florida Low Cost Personal Auto Policy ("Auto Policy")(Doc. #60-2, Exh. A), and that Leader would not indemnify nor defend him for any such bodily injury claims arising from the accident.  (Doc. #61-5, Exh. 4.)  By letter dated July 20, 2005, Steven G. Koeppel, as counsel for Calhoon, sent a letter to Adrianan Sandoval, at Leader, advising of the accident and stating:

> Please be advised that my client has authorized me to settle any and all claims she has against your insured for payment of all available bodily injury liability limits and $500.00 for her property damage.  This offer can only be accepted by delivering a draft or check made payable to Yeslow & Koeppel, P.A. and Kelly Calhoon, to my office by 5:00 p.m. Friday, August 5, 2005 at 2:00 p.m., accompanied by a statement of disclosure in full compliance with Florida Statute § 627.4137. We will also need a statement under oath from your insured setting forth that he has no significant assets, nor other liability insurance, and that he is unable to satisfy a significant judgment in excess of his available policy limits.
>
> . . . .

---

[1]Many of the supporting documents name Infinity.  Defendant Leader states that it is a subsidiary of Infinity.  The Court will only refer to Leader.

> The terms of this settlement proposal do not include release to any other persons, firms, or corporations that are or may be liable.  If the terms of the settlement are not met, as discussed above, we will proceed with litigation seeking the full value of the claim.

(Doc. #61-7, Exh. 6.)  By letter dated August 5, 2005, Lynne Takais responded to Mr. Koeppel providing "a certified copy of the Declaration and Insurance Policy for Travis White together with an Affidavit of No Other Insurance . . . .  I have also enclosed a draft in the sum of $500.00 representing payment from property damage sustained by your client as set forth in your demand dated July 20, 2005."  (Doc. #61-9, Exh. 8.)

On or about August 19, 2005, plaintiff filed a Complaint (Doc. #60-9, Exh. H, p. 3) against White in Circuit Court in and for Lee County, Florida for damages stemming from the accident.  White did not appear and a Default was entered on February 7, 2006.  (Id.)  On May 1, 2006, the presiding circuit judge referred the matter to arbitration.  (Id. at Exh. J.)  On May 18, 2006, the Arbitrator entered an Arbitration Order (Id. at Exh. K) awarding damages totaling $11,108,996.41, exclusive of taxable costs or attorney's fees.  By letter dated April 4, 2006, Mr. Koeppel returned the original check for property damage stating that "terms of the settlement were not met and the check is being returned to you." (Doc. #60-10, Exh. I.)  On May 24, 2006, the circuit judge entered a Final Judgment (Id. at Exh. L) pursuant to the arbitration award in favor of plaintiff and against White.

On August 21, 2006, the originally named defendant removed the Amended Complaint (Doc. #2) to federal court on the basis of diversity jurisdiction.  On September 22, 2006, a Second Amended Complaint (Doc. #19) was filed naming Leader, who filed an Answer, Affirmative Defenses (Doc. #20).  The Second Amended Complaint alleges that Leader assumed the duty to defend and therefore to settle the entire claim against the insured (White) who executed an assignment of any and all claims against Leader to plaintiff.

### III.

Plaintiff argues that Leader had the opportunity to settle under the terms of the letter from Mr. Koeppel; that the Auto Policy clearly ceded control to Leader to make settlement decisions; and that since the Auto Policy was a contract of adhesion it is not limited to the matters in the Declaration Page. Plaintiff further argues that Leader assumed the duty to settle when it tendered a counter-offer that did not mirror the initial letter offer by attorney Koeppel.

Defendant argues that without bodily injury coverage, White wholly retained the ability to settle; that accepting plaintiff's position would necessarily entail believing that she intended to settle her bodily injury claims for zero dollars because no bodily injury coverage was actually available; that defendant owed no good faith duty with regard to an uncovered claim and therefore did not have the ability to accept a settlement offer; that plaintiff did

not have the mental capacity to authorize settlement on her behalf in any event; that Leader settled the only covered claim; and that the underlying judgment against White is void.

### A.

"Florida law clearly states that liability of an insurer depends upon whether the insured's claim is within the coverage of the policy.  This remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action. [ ]  A determination of coverage, therefore, is a condition precedent to any recovery against an insurer."  Spencer v. Assurance Co. of Am., 39 F.3d 1146, 1149 (11th Cir. 1994)(citations omitted).  Coverage must be determined before an action for bad faith may proceed.  Hartford Ins. Co. v. Mainstream Const. Group, Inc., 864 So. 2d 1270, 1272 (Fla. 5th DCA 2004)(citing Blanchard v. State Farm Mut. Ins. Co., 575 So. 2d 1289, 1291 (Fla. 1991)).

The Personal Auto Declaration (Doc. #60-2, Exh. A) provides property damage liability coverage in the amount of $10,000.00 for each accident; and personal injury protection (basic) with a $1,000.00 deductible to White.  The Auto Policy (Doc. #60-2, Exh. A) provides that if Declarations Page "shows a premium charged for this coverage, **[Leader]** will pay damages for **bodily injury** and **property damage** for which an **insured person** is legally liable because of an **accident** up to the policy limits stated on the **Declarations Page**."  (Id. at p. 8, Part A - Liability

Coverage)(emphasis in original).  Under the Limits of Liability

section of the Auto Policy,

> Regardless of the limits of liability shown on the
> **Declarations Page** or elsewhere in this policy, the limits
> for **bodily injury** and **property damage** liability afforded
> by this policy to an **insured person** other than:
>
> 1. **[White]**; or
>
> 2. a **relative** or a **resident** of **your** household,
>
> shall not exceed those amounts necessary to satisfy the
> **minimum statutory limits** of the financial responsibility
> law of the **state** in which the **bodily injury** or **property
> damage** policy was written.
>
> . . . .  Any amount paid or payable under this coverage
> to or for an **insured person** will be reduced by any
> payment made to that person under Part B - Personal
> Injury Protection Coverage . . . .

(Id. at p. 10)(emphasis in original).  Under Part B for Personal

Injury Protection Coverage, Leader "will pay benefits for **bodily**

**injury** sustained by:  1. **[White]** or a **relative** while **occupying** a

motor vehicle, . . .; or 2. any other person while **occupying** the

**insured motor vehicle . . . ."**   (Id. at p. 11)(emphasis in

original).  On March 7, 2005, Travis White signed a Rejection of

Bodily Liability Coverage, which states:

> In accordance with applicable Florida Statutes, I
> understand and elect to purchase Property Damage
> Liability and Personal Injury Protection only and hereby
> reject Bodily Injury Liability coverage.  My agent has
> fully explained to me the coverages I am rejecting.  I
> fully understand that the automobile insurance policy of
> which this rejection forms a part does not and will not
> protect me, family members, or others listed on this
> policy for any amount we may become legally obligated to
> pay as damages because of bodily injury, sickness or

disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile(s) insured by this policy whether or not such legal obligation to pay arises as the result of an accident which occurs in the state of Florida or elsewhere.

(Doc. #61-2, Exh. 1.)  Based on the Declaration Page, Auto Policy, and Rejection of Bodily Liability Coverage signed by White, the Court finds that no express or contractual coverage exists for bodily injury such that Leader would have owed a duty to defend, let alone a duty to settle.  See, e.g., Allstate Ins. Co. v. RJT Enters., Inc., 692 So. 2d 142, 144 (Fla. 1997).

Plaintiff cites to the Duties section of the Auto Policy, which requires the insured to notify the insurer "promptly" and to "[n]either admit fault, assume any obligation, nor agree to incur any expense in connection with any claim or **accident. . . .** FAILURE TO COMPLY WITH ANY OR ALL OF THE CONDITIONS ABOVE MAY RESULT IN OUR REFUSAL TO EXTEND TO **YOU** ANY PROTECTION UNDER THIS POLICY FOR THE **ACCIDENT** OR LOSS."  (Doc. #60-2, Exh. A, p. 7.)  Plaintiff argues that the Duties section relinquished White's ability to settle to the insurer, however, the standard language of the Auto Policy simply outlines the procedures for the period immediately following an accident.  The Court rejects the argument that this section ceded control to Leader beyond the Auto Policy's limits of coverage.  Additionally, in light of the considerable regulation over the insurance industry and the permissible contractual

language, the Court rejects the argument that the Auto Policy was a contract of adhesion.  In <u>Pasteur Health Plan, Inc. v. Salazar</u>, 658 So. 2d 543, 545 (Fla. 3d DCA 1995), the court stated that "Florida courts have long held that all ambiguities in insurance contracts, as contracts of adhesion, should be construed in the light most favorable to the insured."  Construing a contract in favor of the insured does not mean that policy limits should not be honored.

**B.**

Even without coverage, the insurer could owe a duty to settle "because it expressly undertook such duty or because the circumstances created a duty."  <u>Allstate Indem. Co. v. Oser</u>, 893 So. 2d 675, 677 (Fla. 1st DCA 2005)(footnote omitted).  If it is determined that a duty was owed or undertaken, this entailed

> apprising the client of settlement opportunities within a reasonable time after they were presented; it entailed the duty to warn the client of difficulties which the litigation posed for him wherever such difficulties were not included within the contract of indemnity; it included the duty to advise the client of the outcome of the litigation and of any particular procedures which might lessen its financial impact upon him; and it included the conduct of settlement negotiations in good faith to the interests of the insured wherever those interests might be divergent from the interests of the insurance company.

<u>Ging v. American Liberty Ins. Co.</u>, 423 F.2d 115, 120-21 (Fla. 1970).  Leader sent White a letter, dated July 21, 2005, indicating that it would be responding pursuant to statute and would keep White "duly informed regarding the status of this claim up unto the

time of disposition.   As you may recall, you have NO [bodily injury] or [uninsured motorist] coverage available to you for the date of loss listed above. . . . It is important to emphasize the importance of receiving this document timely, as without it the attorney could reject any settlement offer we might make and then seek a judgment against you directly in excess of your policy limits." (Doc. #61-8, Exh. 7.)  On or about February 23, 2006, Leader sent White a letter, enclosing a copy of a Summons & Complaint and Motion to Default, indicating "we are unable to provide defense or pay indemnity in this action. . . . It would be in your best interest to have your own personal attorney review and advise you what your best course of action would be in this situation.  This is something you must take seriously and respond to as it could affect your credit standing if left unattended." (Doc. #61-12, Exh. 11.)

Although Leader had the *opportunity* to settle, it is clear that it did not have the *ability* to settle under the terms presented by attorney Koeppel.  See FLA. STAT. § 624.155(b).  Even if the Court were to treat the tendered check for $500, representing property coverage only, as a counter-offer by Leader, nothing implied an offer beyond the policy limits.  This, as in Oser, is clearly a situation of plaintiff trying to satisfy a judgment against White and not an effort to obtain policy limits. The issue of good faith is only relevant in cases involving claims

beyond the policy limits.  <u>Shuster v. South Broward Hosp. Dist.</u>
<u>Physicians' Prof'l Liab.</u>, 570 So. 2d 1362, 1365 (Fla. 4th DCA
1990).

**C.**

The remaining arguments address plaintiff's mental capacity
and whether the underlying judgment is void.  Plaintiff's mental
capacity is not relevant to the issues before the Court and the
underlying judgment was rendered in a state court proceeding
outside the purview of the undersigned.  Therefore, these arguments
are rejected.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.  Plaintiff's Motion for Partial Summary Judgment (Doc. #60)
is **DENIED.**

2.  Defendant's Motion for Final Summary Judgment (Doc. #61)
is **GRANTED.**

3.  The Clerk shall enter judgment in favor of defendant and
against plaintiff, terminate all pending deadlines as moot, and
close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this   15th   day of
November, 2007.

                                    JOHN E. STEELE
                                    United States District Judge